FILED
CLERK, U.S. DISTRICT COURT

MAR 25 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  TRACY COLLIER,                    )   NO. ED CV 07-1116-CBM(E)
                                      )
12                  Petitioner,       )
                                      )   ORDER ADOPTING FINDINGS,
13       v.                           )
                                      )   CONCLUSIONS AND RECOMMENDATIONS
14  DEXTER, Warden,                   )
                                      )   OF UNITED STATES MAGISTRATE JUDGE
15                  Respondent.       )
    _____)

16

17

18          Pursuant to 28 U.S.C. § 636, the Court has reviewed the

19  Petition, all of the records herein and the attached Report and

20  Recommendation of United States Magistrate Judge.  The Court approves

21  and adopts the Magistrate Judge's Report and Recommendation.

22

23          IT IS ORDERED that Judgment be entered denying and dismissing

24  the Petition with prejudice.

25  ///

26  ///

27  ///

28  ///

1     IT IS FURTHER ORDERED that the Clerk serve copies of this

2 Order, the Magistrate Judge's Report and Recommendation and the

3 Judgment herein by United States mail on Petitioner and counsel for

4 Respondent.

5

6     LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8     DATED: 3/2 4, 2008.

9

10

11

              CONSUELO B. MARSHALL

12          UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11   TRACY COLLIER,                )   ED CV 07-1116-CBM(E)
                                    )
12           Petitioner,           )
                                    )
13      v.                         )   REPORT AND RECOMMENDATION OF
                                    )
14   DEXTER, Warden,               )   UNITED STATES MAGISTRATE JUDGE
                                    )
15           Respondent.           )
     _____)

16

17

18       This Report and Recommendation is submitted to the Honorable

19   Consuelo B. Marshall, United States District Judge, pursuant to 28

20   U.S.C. section 636 and General Order 05-07 of the United States

21   District Court for the Central District of California.

22

23                            PROCEEDINGS

24

25       Petitioner filed a "Petition for Writ of Habeas Corpus By a

26   Person in State Custody" on August 31, 2007.   Respondent filed an

27   Answer on November 2, 2007.   Petitioner did not file a Reply within

28   the allotted time.

1   On November 28, 2007, the Court issued an Order requiring

2   Petitioner to file a Reply.  Petitioner did not file a Reply within

3   the time specified in the Order.  On January 8, 2008, the Magistrate

4   Judge issued a Report and Recommendation recommending dismissal of the

5   Petition without prejudice for failure to prosecute.

6

7   On January 25, 2008, Petitioner filed an "Objection to Report and

8   Recommendation of United States Magistrate Judge," to which was

9   attached Petitioner's Reply.  On February 1, 2008, the Magistrate

10  Judge issued an Order withdrawing the Report and Recommendation of

11  January 8, 2008.

12

13  **BACKGROUND**

14

15  In 1992 a jury found Petitioner guilty of attempted wilful,

16  deliberate and premeditated murder, and found true the allegation that

17  Petitioner personally used a firearm within the meaning of California

18  Penal Code section 12022.5(a) (Respondent's Lodgment 1).  The court

19  sentenced Petitioner to a term of life with the possibility of parole

20  plus four years on the firearm enhancement (Respondent's Lodgment 1).[1]

21  ///

22  ///

23  ///

24  ///

25  ///

26  _____

27  [1]   The punishment for wilful, deliberate and premeditated
    murder is life with the possibility of parole.  See Cal. Penal
28  Code § 664(a).

2

1   On November 16, 2006, Petitioner appeared before the California

2   Board of Parole Hearings ("Board")[2] for a subsequent parole hearing

3   (Respondent's Lodgment 3).  The Board denied parole for two years

4   (id.).

5

6   Petitioner filed a petition for habeas corpus in the San

7   Bernardino Superior Court, which that court denied in a brief order

8   (Respondent's Lodgment 4).  Petitioner filed habeas corpus petitions

9   in the California Court of Appeal and the California Supreme Court,

10   which those courts denied summarily (Respondent's Lodgments 5, 6).

11

12   **THE HEARING AND DECISION**

13

14   I.   **The Hearing**

15

16   Petitioner appeared at the hearing on November 16, 2006,

17   represented by counsel.  The presiding commissioner read into the

18   record the summary of the crime from the Court of Appeal's decision:

19

20   On February 5, 1992 the inmate was at the home of a female

21   acquaintance, along with a cocaine dealer named Rat and the

22   victim.  About 7:30 p.m. the woman, Estelle Collier

23   (phonetic) (unaudible) a silver gun.  Although she could not

24   be certain she believed that Collier put the silver gun back

25   into his pocket and gave a black gun to Rat.  The victim

26   _____

27   [2]   On July 1, 2005, the California Board of Prison Terms

28   was abolished and replaced by the California Board of Parole
Hearings.  See Cal. Penal Code § 5075(a).

1   purchased cocaine from Rat and he and the woman smoked it

2   while Collier and Rat used the victim's truck to go to a

3   fast food restaurant.  Collier and Rat returned and said

4   they had to leave.  Both had guns.  Collier returned the

5   victim's truck keys to him.  The victim got into his truck

6   and backed out of the driveway.  Collier came out of the

7   house and approached the passenger door of the truck.  The

8   victim unlocked it and Collier opened it.  He was holding

9   the silver gun to the side and he told the victim "get the

10  F--- out of the truck."  The victim told the inmate to move

11  so he could drive back into the driveway.  The inmate did

12  and the victim punched the accelerator to get away from the

13  inmate.  Shots rang out.  The victim saw the inmate pointing

14  his gun at him and firing.  The woman testified that there

15  were pauses between the shots.  As the victim turned the

16  corner a bullet hit the back of his head.  The back window

17  of the victim's truck had been shattered by the gunfire.

18  There were two or three bullet holes through the passenger

19  door and one through the passenger window.  Three to the

20  passenger door, one of which penetrated into the cab, one

21  through the passenger side fender and two exit holes on the

22  windshield.

23

24  (Respondent's Lodgment 3, pp. 27-29).

25

26       The presiding commissioner asked Petitioner: "Is that pretty much

27  what transpired, sir?" (Respondent's Lodgment 3, p. 29).  Petitioner

28  answered: "Yes." (Respondent's Lodgment 3, p. 29).  Petitioner said

4

1  that Rat and the victim "made a deal over the truck," and that

2  Petitioner saw Rat and the victim having an "altercation"

3  (Respondent's Lodgment 3, p. 30).   Petitioner contended that he walked

4  up to the truck and said to the victim "man, you always trippin', you

5  high" (Respondent's Lodgment 3, p. 29).   According to Petitioner, the

6  victim said: "'all right, well, I'm going to back up and we goin' to

7  renegotiate' or whatever" (Respondent's Lodgment 3, p. 29).

8  Petitioner explained that, because of the way the truck was turned,

9  "when he punched it, it swung around like this and it almost hit us"

10  (Respondent's Lodgment 3, p. 29).   Petitioner went on:

11

12       So from that point it was about, you know, bam, bam, you

13       know, kind of like that because it wasn't the point to just

14       go and shoot up for the truck because that's why, it didn't

15       happen that way.

16

17  (Respondent's Lodgment 3, p. 29).

18

19       Petitioner denied walking up to the victim and pointing the gun

20  at him (Respondent's Lodgment 3, p. 30).   Petitioner denied telling

21  the victim to "get the F--- out of the truck" (Respondent's Lodgment

22  3, p. 30).   Petitioner said: "When [the victim] floored it off and

23  punched off that's when my gun had shot to fire" (Respondent's

24  Lodgment 3, p. 30).   Petitioner admitted a witness said she saw

25  Petitioner loading the gun before the shooting, but denied he had done

26  so (Respondent's Lodgment 3, p. 39).

27  ///

28  ///

5

1    Petitioner admitted that for years he denied committing the
2    crime, but said that over time while in prison he came to realize
3    his crime was "senseless" (Respondent's Lodgment 3, pp. 33-36).
4    Petitioner said he was "sorry for everything" (Respondent's Lodgment
5    3, p. 36).

6

7    Petitioner said he carried the gun "for protection" from the
8    "people that [Petitioner] was running with" (Respondent's Lodgment 3,
9    pp. 37-38).  Petitioner denied being a gang member at the time, and
10   denied telling a probation officer that Petitioner had been a gang
11   member since the age of fifteen (Respondent's Lodgment 3, pp. 31-32).
12   However, Petitioner acknowledged he told a psychologist that he
13   officially joined a gang when he was around fifteen (Respondent's
14   Lodgment 3, p. 59).

15

16   Petitioner had a juvenile adjudication for a "hit and run" and
17   adult convictions for possession of a loaded firearm, possession of a
18   concealed weapon, possession of a controlled substance, possession of
19   cocaine base for sale, giving false identification to a peace officer,
20   and transportation or sale of a controlled substance (Respondent's
21   Lodgment 2; Respondent's Lodgment 3, pp. 43-46).  Petitioner had been
22   charged with infliction of corporeal injury upon a spouse or co-
23   habitant, his sister, but said the family dropped the charges
24   (Respondent's Lodgment 3, pp. 454-56).

25

26   Petitioner had obtained his GED, and had completed a course in
27   Upholstery and had been involved in Vocational Office Supplies, Office
28   Machines Repair, PIA Textiles, Mill and Cabinet and Vocational

1  Plumbing (Respondent's Lodgment 3, pp. 49-50). Petitioner had worked
2  in the kitchen and as a porter (Respondent's Lodgment 3, p. 50).
3  Petitioner said he had completed Vocational Plumbing, and had a
4  laudatory chrono from the Vocational Plumbing Instructor and a
5  certificate for outstanding participation in a river fair project
6  (Respondent's Lodgment 3, pp. 51, 52-53). Petitioner had certificates
7  from FEMA, Utilities Management Institute (Respondent's Lodgment 3,
8  p. 52). Petitioner had been involved in AA and received a certificate
9  of 26 weeks completion in 2000 (Respondent's Lodgment 3, p. 50).
10 Petitioner had certificates of completion for Criminon, Conflict
11 Resolution, Anger Management and a mentoring program, and had taken a
12 course about handling depression (Respondent's Lodgment 3, pp. 51-52).
13 The deputy commissioner said that a correctional counselor's notes
14 said Petitioner had completed certain courses, but that Petitioner's
15 file did not contain certificates of completion (Respondent's Lodgment
16 3, pp. 48-49). Petitioner said a "lot of stuff" in his prison file
17 was missing (Respondent's Lodgment 3, p. 50).

18

19      The deputy commissioner stated that, although at Petitioner's
20 last hearing in 2003 the Board told Petitioner to "spend some time
21 away from your 115's," Petitioner had received three such disciplinary
22 violations since his last hearing, one for masturbation and two for
23 indecent exposure (Respondent's Lodgment 3, p. 53).[3] Petitioner had a
24 total of six disciplinary violations with one pending (Respondent's

25

26  _____

27      [3]   The California Department of Corrections and
    Rehabilitation uses Form 115 to report prisoners' rules
    violations. <u>See</u> <u>Lira v. Herrera</u>, 427 F.3d 1164, 1167 n.4
28  (9th Cir. 2005), <u>cert. denied</u>, 127 S. Ct. 1212 (2007).

1  Lodgment 3, p. 53).  Petitioner had four "128's,"[4] the last one in

2  1994 (Respondent's Lodgment 3, p. 53).

3

4       Petitioner stated that, when he first came to prison, he received

5  a disciplinary violation for fighting "and for little stuff like that"

6  (Respondent's Lodgment 3, p. 54).  The deputy commissioner commented

7  that fighting was "no 'little stuff'" (Respondent's Lodgment 3,

8  p. 54).  Petitioner contended he never had had problems with prison

9  staff until he arrived at Chuckawalla State Prison, where he received

10 "back to back" masturbation charges, which Petitioner contended were

11 retaliatory (Respondent's Lodgment 3, pp. 55-56).  Petitioner said he

12 had a civil rights lawsuit pending concerning that situation

13 (Respondent's Lodgment 3, p. 56).

14

15      A psychologist's report, prepared in 2006, opined that the

16 "prognosis for a positive adjustment into community living for inmate

17 Collier [was] favorable" (Respondent's Lodgment 3, p. 60).  However,

18 the psychologist also stated, erroneously, that Petitioner's last

19 "115" was over ten years before (Respondent's Lodgment 3, pp. 58-63).

20

21      Petitioner said his family was very involved in a church in

22 San Bernardino (Respondent's Lodgment 3, p. 40).  Petitioner had a

23 common-law wife with whom he remained friendly, and had two sons

24 (Respondent's Lodgment 3, pp. 41-42).  Petitioner admitted he sold

25

26 _____

27      [4]   The California Department of Corrections and
   Rehabilitation uses counseling "chronos" on Form 128 to record
28 instances of minor misconduct.  See Cal. Code Regs. tit. 15, §
   3312(a)(2).

8

1   crack but claimed he never used it (Respondent's Lodgment 3, pp. 42-

2   43).  Petitioner provided letters of support, including letters from

3   his mother and sisters indicating that Petitioner could live with his

4   family and would receive family support if paroled (Respondent's

5   Lodgment 3, pp. 64-67).  Petitioner had a letter from a church deacon

6   who employed people in construction work (Respondent's Lodgment 3,

7   pp. 68-69).

9   II.   **The Board's Decision**

11      The Board denied parole for two years, concluding that Petitioner

12  would "pose an unreasonable risk of danger to society or a threat to

13  public safety if released from prison" (Respondent's Lodgment 3,

14  p. 80).  The Board stated that the commitment offense was carried out

15  "in an especially cruel, cold, deliberate[,] . . . dispassionate and

16  calculating manner," and demonstrated a "callous disregard for not

17  only human suffering but also for human life, because that man could

18  have easily been killed" (Respondent's Lodgment 3, pp. 80-81).  The

19  Board discussed Petitioner's criminal history, all of which occurred

20  while Petitioner was still in high school (Respondent's Lodgment 3,

21  pp. 81-82).  The Board noted that Petitioner had performed poorly on

22  probation, showing Petitioner "failed society's attempts to correct

23  your criminality" (Respondent's Lodgment 3, p. 82).  The Board noted

24  that Petitioner had admitted his gang affiliation to the psychologist

25  (Respondent's Lodgment 3, p. 82).

27      The Board also noted Petitioner's history of four chronos, seven

28  serious 115's, and a pending disciplinary charge (Respondent's

9

1  Lodgment 3, p. 83).  The Board deemed the 2006 psychologist's

2  evaluation "very contradictory," noting that the report contained

3  inaccuracies including an incorrect statement that Petitioner had been

4  discipline-free for ten years (Respondent's Lodgment 3, p. 83).  The

5  Board also expressed concern that the psychologist's report did not

6  address Petitioner's psychosexual behavior while in prison, indicating

7  that Petitioner's prison file included a correctional officer's letter

8  stating that Petitioner said he knew he "had a problem" (Respondent's

9  Lodgment 3, p. 84).  Petitioner denied making this statement

10 (Respondent's Lodgment 3, p. 85).  The Board stated it had found a

11 report in Petitioner's file stating that Petitioner did "certain

12 things in the presence of the female staff" (Respondent's Lodgment 3,

13 p. 85).  The Board felt Petitioner had a problem he needed to address,

14 and said it would ask the psychologist to talk to Petitioner about the

15 problem (Respondent's Lodgment 3, p. 85).

16

17      The Board also indicated that Petitioner needed to supply more

18 than the church deacon's letter regarding possible employment, such as

19 a letter from an employer providing a specific offer of employment to

20 Petitioner (Respondent's Lodgment 3, p. 84).  The Board also observed

21 that, although Petitioner had spent a great deal of time accusing

22 staff of mistreating Petitioner, "most if not all" of Petitioner's

23 accusations were undocumented (Respondent's Lodgment 3, pp. 84-85).

24

25      In denying parole for two years, the Board noted that the crime

26 was especially cruel and carried out in a calculated manner, and that

27 Petitioner's version "definitely" did not match the report of the

28 crime in the Court of Appeal's opinion (Respondent's Lodgment 3,

1  p. 86).   The Board also noted Petitioner had a pending disciplinary

2  charge and a disciplinary conviction in 2006 (Respondent's Lodgment 3,

3  p. 86).   The Board recommended that Petitioner become and remain

4  disciplinary-free, that he work toward reducing his custody level,

5  that he continue to upgrade vocationally and participate in available

6  self-help and therapy programs, and that he cooperate in the

7  completion of another psychologist's report (Respondent's Lodgment 3,

8  pp. 86-87).

9

10                          **STANDARD OF REVIEW**

11

12      A federal court may not grant an application for writ of habeas

13  corpus on behalf of a person in state custody with respect to any

14  claim that was adjudicated on the merits in state court proceedings

15  unless the adjudication of the claim: (1) "resulted in a decision that

16  was contrary to, or involved an unreasonable application of, clearly

17  established Federal law, as determined by the Supreme Court of the

18  United States"; or (2) "resulted in a decision that was based on an

19  unreasonable determination of the facts in light of the evidence

20  presented in the State court proceeding."   28 U.S.C. § 2254(d) (as

21  amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002);

22  Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S.

23  362, 405-09 (2000).

24

25      "Clearly established Federal law" refers to the governing legal

26  principle or principles set forth by the Supreme Court at the time the

27  state court renders its decision.   Lockyer v. Andrade, 538 U.S. 63,

28  71-72 (2003).   A state court's decision is "contrary to" clearly

                                   11

1  established Federal law if: (1) it applies a rule that contradicts
2  governing Supreme Court law; or (2) it "confronts a set of facts . . .
3  materially indistinguishable" from a decision of the Supreme Court but
4  reaches a different result.  See Early v. Packer, 537 U.S. at 8
5  (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

6

7       Under the "unreasonable application prong" of section 2254(d)(1),
8  a federal court may grant habeas relief "based on the application of a
9  governing legal principle to a set of facts different from those of
10  the case in which the principle was announced."  Lockyer v. Andrade,
11  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537
12  U.S. at 24-26 (state court decision "involves an unreasonable
13  application" of clearly established Federal law if it identifies the
14  correct governing Supreme Court law but unreasonably applies the law
15  to the facts).

16

17      A state court's decision "involves an unreasonable application of
18  [Supreme Court] precedent if the state court either unreasonably
19  extends a legal principle from [Supreme Court] precedent to a new
20  context where it should not apply, or unreasonably refuses to extend
21  that principle to a new context where it should apply."  Williams v.
22  Taylor, 529 U.S. at 407 (citation omitted).

23

24      "In order for a federal court to find a state court's application
25  of [Supreme Court] precedent 'unreasonable,' the state court's
26  decision must have been more than incorrect or erroneous."  Wiggins v.
27  Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state
28  court's application must have been 'objectively unreasonable.'"  Id.

1  at 520-21 (citation omitted); <u>see also</u> <u>Clark v. Murphy</u>, 331 F.3d 1062,

2  1068 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003).

3

4      In applying these standards, this Court looks to the last

5  reasoned state court decision.  <u>See</u> <u>Franklin v. Johnson</u>, 290 F.3d

6  1223, 1233 n.3 (9th Cir. 2002).  Where no such reasoned opinion

7  exists, as where a state court rejected a claim in an unreasoned

8  order, this Court must conduct an independent review to determine

9  whether the decisions were contrary to, or involved an unreasonable

10 application of, "clearly established" Supreme Court precedent.  <u>See</u>

11 <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).

12

13                    **PETITIONER'S CONTENTIONS**

14

15     Petitioner contends:

16

17     1.  The Board allegedly violated Due Process by assertedly

18 failing to set a term within the statutory range and proportionate to

19 Petitioner's culpability, and in conformity with the sentencing

20 matrix;

21

22     2.  The Board allegedly subjected Petitioner to excessive

23 punishment in violation of the Eighth Amendment;

24

25     3.  The Board's decision allegedly was not supported by "some

26 evidence";

27

28     4.  The Board allegedly violated Due Process by denying parole on

                                   13

1  the basis of Petitioner's commitment offense; and

2

3       5.   The Board assertedly violated Petitioner's procedural Due

4  Process right and demonstrated bias, allegedly by denying Petitioner

5  the right to speak at the hearing.

6

7                              **DISCUSSION**

8

9       For the reasons discussed below, the Petition should be denied

10 and dismissed on the merits with prejudice.[5]

11

12 **I.   Governing Legal Standards**

13

14      "There is no constitutional or inherent right of a convicted

15 person to be conditionally released before the expiration of a

16 valid sentence."  <u>Greenholtz v. Inmates of Nebraska Penal and</u>

17 <u>Correctional Complex</u>, 442 U.S. 1, 7 (1979) ("<u>Greenholtz</u>").  In some

18 instances, however, states may confer a liberty interest in parole

19 under state law.  <u>Id.</u> at 12.  Section 3041(b) of the California Penal

20 Code provides, in pertinent part:

21

22      The panel or the board . . . shall set a release date unless

23      it determines that the gravity of the current convicted

24      offense or offenses, or the timing and gravity of current or

25 _____

26      [5]   The Court has read, considered and rejected on the
   merits all of Petitioner's contentions.  The Court discusses
27 Petitioner's principal contentions herein.

28

1    past convicted offense or offenses, is such that

2    consideration of the public safety requires a more lengthy

3    period of incarceration for this individual, and that a

4    parole date, therefore, cannot be fixed at this meeting.

5

6         The Ninth Circuit has held that section 3041(b) confers a

7    constitutionally protected liberty interest in parole.  Hayward v.

8    Marshall, ___ F.3d ___, 2008 WL 43716, at *4 (9th Cir. Jan. 3, 2008)

9    ("Hayward"); Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007)

10   ("Irons"); Sass v. Calif. Bd. of Prison Terms, 461 F.3d 1123, 1127

11   (9th Cir. 2006) ("Sass"); Biggs v. Terhune, 334 F.3d 910, 914-15 (9th

12   Cir. 2003) ("Biggs").

13

14        Due Process requires that there exist "some evidence" to support

15   a parole decision.  Hayward, 2008 WL 43716, at *5; Irons, 505 F.3d at

16   851 ("At the time that Irons' state habeas petition [challenging a

17   2001 denial of parole] was before the state courts, the Supreme Court

18   had clearly established that a parole board's decision deprives a

19   prisoner of due process . . . if the board's decision is not supported

20   by 'some evidence in the record.'"); Sass, 461 F.3d at 1128-29 ("some

21   evidence" standard is "clearly established in the parole context");

22   Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Perveler v. Estelle,

23   974 F.2d 1132, 1134 (9th Cir. 1992); Jancsek v. Oregon Bd. of Parole,

24   833 F.2d 1389, 1390 (9th Cir. 1987) (citing Superintendent,

25   Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445,

26   455 (1985)).  "To determine whether the some evidence standard is met

27   'does not require examination of the entire record, independent

28   assessment of the credibility of witnesses, or weighing of the

1  evidence.'"  <u>Sass</u>, 461 F.3d at 1128 (quoting <u>Superintendent,</u>

2  <u>Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. at

3  455-56).  The "some evidence" standard is "minimal," and "'the

4  relevant question is whether there is <u>any</u> evidence in the record that

5  could support the conclusion reached by the [Board].'"  <u>Sass</u>, 461 F.3d

6  at 1128 (quoting <u>Superintendent, Massachusetts Correctional</u>

7  <u>Institution, Walpole v. Hill</u>, 472 U.S. at 455-56; emphasis added).[6]

8

9       State authorities' discretion in parole matters is "great" and

10  "involves the deliberate assessment of a wide variety of

11  individualized factors on a case-by-case basis, and the striking of a

12  balance between the interests of the inmate and the public."  <u>In re</u>

13  <u>Powell</u>, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

14  (internal quotations and citation omitted); <u>see also</u> <u>Biggs</u>, 334 F.3d

15  at 915 (California law allows the state authorities "to consider a

16  myriad of factors when weighing the decision of granting or denying

17  parole"); <u>Glauner v. Miller</u>, 184 F.3d 1053, 1055 (9th Cir. 1999)

18  (state authorities have "broad discretion" to determine whether "the

19  _____

20       [6]    Respondent's contention that the "some evidence"
    standard does not apply is without merit.  <u>See</u> <u>Irons</u>, 505 F.3d at
21  851; <u>Sass</u>, 461 F.3d at 1128.  None of the Supreme Court cases
    cited by Respondent "undercut the theory or reasoning underlying
22  the prior circuit precedent in such a way that the cases are
    clearly irreconcilable."  <u>See generally</u> <u>Miller v. Gammie</u>, 335
23  F.3d 889, 900 (9th Cir. 2003) (en banc).  Indeed, the Ninth
    Circuit implicitly rejected this argument in <u>Hayward</u>.  <u>See</u>
24  <u>Hayward</u>, 2008 WL 43716 at *5.  <u>Hayward</u> applied the "some
    evidence" standard despite the State's argument that no clearly
25  established Supreme Court law endorsed the application of the
    "some evidence" standard in the parole context.  <u>See</u> <u>Respondent-</u>
26  <u>Appellee's Brief</u>, filed December 26, 2006, in <u>Hayward v.</u>
    <u>Marshall</u>, 9th Cir. case number 06-55392, reproduced at 2006 WL
27  4054091.  Therefore, this Court remains bound by <u>Hayward</u>, <u>Irons</u>
    and <u>Sass</u>.
28

1  necessary [statutory] prerequisites are met") (quoting <u>Board of</u>

2  <u>Pardons v. Allen</u>, 482 U.S. 369, 376 (1987)).

3

4      As indicated above, California Penal Code section 3041(b)

5  provides that the Board "shall set a release date unless it determines

6  that the gravity of the current convicted offense or offenses, or the

7  timing and gravity of current or past convicted offense or offenses,

8  is such that consideration of the public safety requires a more

9  lengthy period of incarceration for this individual, and that a parole

10  date, therefore, cannot be fixed at this meeting."  Cal. Penal Code §

11  3041(b).  Thus a finding of parole suitability must precede the

12  setting of a parole release date for a life prisoner.  <u>See In re</u>

13  <u>Stanworth</u>, 33 Cal. 3d 176, 183, 187 Cal. Rptr. 783, 654 P.2d 1311

14  (1982).

15

16      Under applicable state regulations, "a life prisoner shall be

17  found unsuitable for and denied parole if in the judgment of the

18  [Board] the prisoner will pose an unreasonable risk of danger to

19  society if released from prison."  Cal. Code Regs. tit. 15, § 2402(a).

20  In determining suitability for parole, the Board may consider, <u>inter</u>

21  <u>alia</u>, "the circumstances of the prisoner's social history; past and

22  present mental state; past criminal history, including involvement in

23  other criminal misconduct which is reliably documented; the base and

24  other commitment offenses, including behavior before, during and after

25  the crime; past and present attitude toward the crime; any conditions

26  of treatment or control, including the use of special conditions under

27  which the prisoner may safely be released to the community; and any

28  other information which bears on the prisoner's suitability for

17

1  release." See Cal. Code Regs. tit. 15, § 2402(b). Circumstances
2  tending to show unsuitability include: (1) a finding that the prisoner
3  committed the commitment offense in a "dispassionate and calculated
4  manner" or "in a manner which demonstrates an exceptionally callous
5  disregard for human suffering"; (2) a finding that the motive for the
6  crime is "inexplicable or very trivial in relation to the offense";
7  (3) the prisoner's unstable social history; (4) psychological factors;
8  and (5) institutional behavior. See Cal. Code Regs. tit. 15, §
9  2402(c). Circumstances tending to favor a finding of suitability
10  include: (1) the absence of a juvenile record; (2) the prisoner's
11  stable social history; (3) signs of remorse; (4) lack of criminal
12  history; (5) a finding that the prisoner has made "realistic plans for
13  release or has developed marketable skills that can be put to use upon
14  release"; and (6) institutional behavior showing "an enhanced ability
15  to function within the law upon release." See Cal. Code Regs.
16  tit. 15, § 2402(d).

17

18      Upon a finding of suitability, the Board sets a "base term"
19  established solely on the gravity of the base crime, using a matrix of
20  base terms set forth in California Code of Regulations § 2403. See
21  Cal. Code of Regs. tit. 15, § 2403(a).

22

23  II.  **Petitioner's Claim That the Board Failed to Set a Term Within the**
24      **Statutory Range Proportionate to Petitioner's Culpability and**
25      **Within the Sentencing Matrix Does Not Warrant Habeas Relief.**

26

27      The sentence for wilful, deliberate and premeditated attempted
28  murder is life with the possibility of parole. Cal. Penal Code §

18

1    664(a).  One who commits wilful, deliberate and premeditated attempted

2    murder of a peace officer receives a sentence of fifteen years to

3    life.  Id.  Petitioner alleges that the Board failed to "set a term"

4    within the statutory range, and denied Petitioner parole despite

5    Petitioner's service of a term allegedly longer than the "statutory

6    maximum," longer than the term specified for those convicted of

7    attempted wilful, deliberate and premeditated murder of a peace

8    officer, and longer than the term specified in the Board's sentencing

9    matrix.

10

11        To the extent Petitioner contends the Board violated state law or

12   regulations, Petitioner is not entitled to habeas relief.  A federal

13   court may grant habeas corpus relief "only on the ground that [the

14   petitioner] is in custody in violation of the Constitution or laws or

15   treaties of the United States."  28 U.S.C. § 2254(a).  Mere errors in

16   the application of state law are not cognizable on habeas corpus.

17   Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Eccher v. Mendoza-

18   Powers, 2007 WL 867985, at *12 n.3 (E.D. Cal. Mar. 20, 2007), Report

19   and Recommendation adopted, 2007 WL 1302490 (E.D. Cal. May 3, 2007)

20   (claims that Board failed to engage in comparative analysis and failed

21   to set a parole date within the sentencing matrix presented only

22   claims of state law error not cognizable on federal habeas).

23

24        In any event, Petitioner's claims lack merit under state law.  As

25   indicated above, under California law, the Board is not required to

26   fix a base term until it finds an inmate suitable for parole.  See

27   Cal. Code Regs. tit. 15, § 2403(a); Cornejo v. Mendoza-Powers, 2008

28

1  WL 163028, at *1 (9th Cir. Jan. 14, 2008);[7] <u>In re Stanworth</u>, 33 Cal.

2  3d at 183.[8]  Therefore, until the setting of a parole date,

3  Petitioner's life term remained the statutory maximum.  Nor does

4  California law require the Board to conduct a proportionality analysis

5  prior to making a suitability determination.  <u>See In re Dannenberg</u>, 34

6  Cal. 4th 1061, 1070-71, 23 Cal. Rptr. 3d 417, 104 P.3d 783 (2005),

7  <u>cert. denied</u>, 546 U.S. 844 (2005) (state regulations "nowhere indicate

8  that the Board must determine an individual inmate's suitability by

9  reference to other offenders in the same class, or to the minimum

10 statutory term for the inmate's offense"); <u>In re Andrade</u>, 141 Cal.

11 App. 4th 807, 814, 46 Cal. Rptr. 3d 317 (2006) ("petitioner's

12 proportionality argument is not valid because proportionality is only

13 to be considered after suitability is determined"); <u>Serrano v.</u>

14 <u>Vasquez</u>, 2008 WL 115197, at *5 (E.D. Cal. Jan. 10, 2008) (Board "is

15 not required to take proportionality into account until after an

16 inmate is found suitable for parole").  Moreover, the Board does not

17 consider the sentencing matrix until it deems an inmate suitable for

18 parole.  <u>See</u> Cal. Code Regs. tit. 15, § 2403(a); <u>In re Dannenberg</u>, 34

19 Cal. 4th at 1091; <u>see also</u> <u>Sass</u>, 461 F.3d at 1132 ("The matrix is

20 intended to ensure sentencing uniformity among those who commit

21 similar crimes. [citation].  Such considerations are, of course,

22 inapplicable in the case of prisoners deemed unsuitable for parole.

23 [citation]."); <u>Ramos v. Kane</u>, 2007 WL 1232052, at *4 (N.D. Cal.

24 _____

25      [7]    The Court may cite unpublished Ninth Circuit opinions
   issued on or after January 1, 2007.  <u>See</u> U.S. Ct. App. 9th Cir.
26 Rule 36-3(b); Fed. R. App. P. 32.1(a).

27      [8]    Thus, as the San Bernardino Superior Court recognized,
   because Petitioner received a life term, there was no otherwise
28 applicable "statutory maximum" (Respondent's Lodgment 4).

1  Apr. 26, 2007) ("going straight to the matrix to calculate the

2  sentence puts the cart before the horse because it ignores critical

3  language in the relevant statute and regulations that requires the

4  prisoner first to be found suitable for parole").  "Nothing in the

5  statute states or suggests that the [Board] must evaluate the case

6  under standards of term uniformity before exercising its authority to

7  deny a parole date on grounds the particular offender's criminality

8  presents a *continuing public danger*."  <u>Sass</u>, 461 F.3d at 1128 (quoting

9  <u>Dannenberg</u>, 34 Cal. 4th at 1070; brackets omitted; original emphasis).

10

11      In sum, under California law, because the Board did not find

12  Petitioner suitable for parole, Petitioner's "maximum" term remained

13  the life term to which he was sentenced.  The Board was not required

14  to set a base term or to use proportionality analysis or the

15  sentencing matrix in setting a parole date.  Therefore, the state

16  courts' rejection of this claim was not contrary to, or an objectively

17  unreasonable application of, any clearly established Federal law as

18  determined by the United States Supreme Court.  <u>See</u> 28 U.S.C. §

19  2254(d).  Petitioner is not entitled to habeas relief on this claim.

20

21  **III. <u>Petitioner's Eighth Amendment Claim Does Not Merit Habeas Relief.</u>**

22

23      Petitioner professes not to challenge his life sentence as

24  unconstitutional, but he contends the Board's asserted abuse of

25  discretion and violation of state law exposed Petitioner to excessive

26  punishment (<u>see</u> Reply, p. 13).  This contention lacks merit.

27  ///

28  ///

1      "The Eighth Amendment, which forbids cruel and unusual

2   punishments, contains a 'narrow proportionality principle' that

3   'applies to noncapital sentences.'" <u>Ewing v. California</u>, 538 U.S. 11,

4   20 (2003) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 996-97 (1991)

5   (Kennedy, J., concurring)).   "The threshold determination in the

6   eighth amendment proportionality analysis is whether [Petitioner's]

7   sentence was one of the rare cases in which a . . . comparison of the

8   crime committed and the sentence imposed leads to an inference of

9   gross disproportionality." <u>United States v. Bland</u>, 961 F.2d 123, 129

10   (9th Cir. 1992), <u>cert denied</u>, 506 U.S. 858 (1992) (citations and

11   quotations omitted; emphasis added); <u>see also</u> <u>Lockyer v. Andrade</u>, 538

12   U.S. 63, 77 (2003) ("[t]he gross disproportionality principle reserves

13   a constitutional violation for only the extraordinary case"); <u>Rummel</u>

14   <u>v. Estelle</u>, 445 U.S. 263, 272 (1980) ("Outside the context of capital

15   punishment, successful challenges to the proportionality of particular

16   sentences have been exceedingly rare.").

17

18      Any claim of unconstitutional disproportionality would stumble at

19   this threshold level.   A comparison of Petitioner's crime and his term

20   of imprisonment does not lead to an "inference of gross

21   disproportionality."   <u>See</u> <u>United States ex rel. Eagle v. Gramley</u>, 1999

22   WL 286086, at *8 (N.D. Ill. Apr. 27, 1999) (30-year sentence for

23   attempted murder not disproportionate); <u>Carter v. Henderson</u>, 602 F.

24   Supp. 1186, 1188-89 (S.D.N.Y.), <u>aff'd</u>, 779 F.2d 36 (2nd Cir. 1985)

25   (sentence of 15 years to life for attempted murder not

26   disproportionate); <u>Ellis v. State</u>, 736 N.E.2d 731, 734 (Ind. 2000)

27   (50-year sentence for attempted murder not disproportionate); <u>People</u>

28   <u>v. Martinez</u>, 76 Cal. App. 4th 489, 496-97, 90 Cal. Rptr. 2d 517 (1999)

1  (sentence of 30 years to life for attempted murder not

2  disproportionate); State v. Elbert, 125 N.H. 1, 15, 480 A.2d 854 (N.H.

3  1984) ("there is no gross disproportion between a penalty of fifteen

4  to thirty years and the offense of attempted second-degree murder");

5  cf. Solem v. Helm, 463 U.S. 277, 290 n.15 (1983) ("clearly no sentence

6  of imprisonment would be disproportionate for [felony murder]");

7  Windham v. Merkle, 163 F.3d 1092, 1106-07 (9th Cir. 1998) (life term

8  for second degree murder not cruel and unusual).

9

10      Courts have upheld even more severe sentences for crimes far less

11  heinous than Petitioner's crime.  See Harmelin (life without

12  possibility of parole for possession of 672 grams of cocaine); United

13  States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir. 1991) (life

14  without possibility of parole for possession of cocaine with intent to

15  distribute); Terrebonne v. Butler, 848 F.2d 500, 507 (5th Cir. 1988),

16  cert. denied, 489 U.S. 1020 (1989) (life without possibility of parole

17  for 21-year-old heroin addict who delivered packets of heroin to an

18  undercover officer); Holley v. Smith, 792 F.2d 1046, 1051-52 (11th

19  Cir. 1986), cert. denied, 481 U.S. 1020 (1987) (life without

20  possibility of parole for recidivistic robber).

21

22      For the foregoing reasons, the state courts' rejection of

23  Petitioner's claims was neither contrary to, nor an unreasonable

24  application of, any clearly established Federal law as determined by

25  the United States Supreme Court.  See 28 U.S.C. § 2254(d)(1).

26  ///

27  ///

28  ///

23

IV.   **Petitioner's Challenge to the Sufficiency of the Evidence Does
      Not Merit Habeas Relief.**

Contrary to Petitioner's contention, "some evidence" supported
the Board's decision that Petitioner's release posed an unreasonable
risk of danger to society or a threat to public safety, including:
(1) the nature of the commitment offense (the loading of the gun, the
firing of multiple gunshots at the victim as he fled in his truck, one
of which hit the victim in the head); (2) Petitioner's version of the
crime which differed from that described by the Court of Appeal, in
an apparent attempt to minimize Petitioner's culpability; (3)
Petitioner's criminal history; (4) Petitioner's disciplinary history;
(5) Petitioner's need for additional therapy; (6) Petitioner's lack of
firm employment plans; and (7) the need for a more recent (and
correct) psychologist's report.   See Sass, 461 F.3d at 1129 (gravity
of petitioner's convicted offenses coupled with his prior offenses
constituted "some evidence" sufficient to support Board's repeated
determination of unsuitability for parole); Wauls v. Muntz, 2007 WL
4165239, at *1 (9th Cir. Nov. 26, 2007) (nature of commitment offense,
criminal history, and disciplinary history sufficient); Willis v.
Kane, 2007 WL 4197494, at *1 (9th Cir. Nov. 19, 2007) (gravity of
commitment offense sufficient); Jackson v. Carey, 2007 WL 2088279, at
*1 (9th Cir. July 19, 2007) (gravity of commitment offense, inadequate
parole plans and failure to participate adequately in self-help
programs sufficient); Lang v. Kane, 2007 WL 1729648, at *1 (9th Cir.
June 15, 2007) (lack of adequate parole plans sufficient); Withers v.
Finn, 2007 WL 2729078, at *7 (E.D. Cal. Sept. 18, 2007), Report and
Recommendation adopted, 2007 WL 3293378 (E.D. Cal. Nov. 5, 2007) (lack

1  of adequate parole plans sufficient); <u>Burnight v. Carey</u>, 2007 WL

2  3231583, at *3 & n.1 (E.D. Cal. Oct. 30, 2007) (nature of commitment

3  offense and triviality of motive sufficient); <u>Trujillo v. Kane</u>, 2007

4  WL 2729074, at *5-6 (N.D. Cal. Sept. 18, 2007) (petitioner's

5  inconsistent statements concerning crime, lack of specific parole

6  plans and need for new psychological report sufficient); <u>Rose v. Kane</u>,

7  2006 WL 3251735, at *9-10 (N.D. Cal., Nov. 2, 2006) (nature of

8  commitment offense, unstable social history and need to continue self-

9  help sufficient); <u>Hatcher v. Carey</u>, 2006 WL 2926735, at *2 (E.D. Cal.,

10  Oct. 11, 2006) (nature of commitment offense, petitioner's record of

11  assaultive behavior, and petitioner's unstable social history and

12  insufficient participation in self-help sufficient).

13

14      To the extent Petitioner contends the Board could not consider

15  the gravity of Petitioner's commitment offense in determining

16  suitability, such a contention lacks merit.  <u>See Sass</u>, 461 F.3d at

17  1129 (gravity of the commitment offenses, coupled with prior criminal

18  history, supported the denial of parole); <u>Biggs</u>, 334 F.3d at 915

19  (Board "can consider all relevant information" in deciding whether to

20  grant parole, including gravity of the commitment offense).

21

22      Petitioner appears to argue that the Board should have weighed

23  more heavily arguably positive factors.  This Court cannot re-weigh

24  the factors supporting parole suitability and the factors supporting

25  parole unsuitability.  <u>See Powell v. Gomez</u>, 33 F.3d at 42; <u>McElwee v.</u>

26  <u>Hamlet</u>, 2003 WL 21556945 at *3 (N.D. Cal. July 3, 2003); <u>see also</u>

27  <u>Crawley v. Knowles</u>, 235 Fed. App'x 563, 564 (9th Cir. 2007) ("The

28  'some evidence' standard does not allow us to entertain Crawley's

1    contentions regarding how the Board evaluated the evidence it had

2    before it when it made its suitability determination. [citation]".).

3

4         Moreover, even if the Board made some insupportable findings, the

5    Court nevertheless must deny habeas relief where, as here, there

6    exists "some evidence" supporting the Board's findings of

7    unsuitability.  See Biggs, 334 F.3d at 916.[9]  Thus, even assuming,

8    arguendo, the Board improperly considered Petitioner's disciplinary

9    conviction for falsifying documents, as Petitioner contends (see

10   Petition, attached memorandum, p. 11), the other evidence before the

11   Board sufficed to satisfy the "some evidence" standard.[10]

12

13        Because "some evidence" supported the Board's unsuitability

14   finding, the state courts' rejection of Petitioner's challenge to the

15   sufficiency of the evidence was not contrary to, or an objectively

16   unreasonable application of, any clearly established Federal law as

17   determined by the United States Supreme Court.  See 28 U.S.C. §

18   2254(d).  Petitioner is not entitled to habeas relief on his challenge

19   to the sufficiency of the evidence.

20   ///

21   ///

22

23        [9]    As indicated above, to the extent Petitioner contends
     the Board violated state law or regulations, Petitioner is not
24   entitled to habeas relief.  See Estelle v. McGuire, 502 U.S. at
     67-68.
25

26        [10]   In any event, although Petitioner produces exhibits
     purportedly showing that this disciplinary conviction was vacated
27   (see Petition, Exhibits, pp. 14-18), Petitioner acknowledged at
     the hearing that the conviction was reissued "so it's still here
28   on me, you know what I mean" (Respondent's Lodgment 3, p. 62).

1    Petitioner argues the Board erred by continuing to rely on the

2  nature of Petitioner's commitment offense, citing, <u>inter alia</u>, <u>Biggs</u>

3  (Petition, attached memorandum, p. 9; Reply, pp. 9-10).  In dicta, the

4  <u>Biggs</u> Court stated:

5

6      <u>Over time</u>, however, <u>should Biggs continue</u> to demonstrate

7      exemplary behavior and evidence of rehabilitation, denying

8      him a parole date simply because of the nature of Biggs'

9      offense and prior conduct <u>would raise serious questions</u>

10     involving his liberty interest in parole. . . .

11

12         . . .  A <u>continued</u> reliance in the future on an

13     unchanging factor, the circumstance of the offense and

14     conduct prior to imprisonment, runs contrary to the

15     rehabilitative goals espoused by the prison system and <u>could</u>

16     <u>result</u> in a due process violation.

17

18 <u>Biggs</u>, 334 F.3d at 916-17 (emphasis added).

19

20     As previously indicated, the Board did not rely solely on the

21 nature of the commitment offense to deny parole in the present case.

22 Therefore, the <u>Biggs</u> dicta would be inapplicable even if it were

23 otherwise persuasive or authoritative.  See <u>Withers v. Finn</u>, 2007 WL

24 2729078, at *6 (distinguishing <u>Biggs</u> where denial of parole

25 additionally was based on petitioner's inadequate parole plans, and

26 thus was not based "<i>solely</i> on immutable factors"; original emphasis);

27 <u>Rose v. Kane</u>, 2006 WL 3251735, at *11 (<u>Biggs</u> dicta inapplicable where

28 the Board did not base denial solely on gravity of commitment offense,

27

1  but also relied on fact that petitioner needed more self-help and

2  therapy).

3

4      Moreover, an analysis of Ninth Circuit cases subsequent to Biggs

5  demonstrates that Petitioner's circumstances cannot justify habeas

6  relief under the Biggs dicta.  In Sass, the Ninth Circuit held that

7  the gravity of the commitment offense (second degree murder) and the

8  evidence of Sass' prior offenses demonstrated the requisite "some

9  evidence" to support the Board's denial of parole.  Sass, 461 F.3d at

10  1129.  Acknowledging the Biggs dicta, the Sass Court indicated

11  nevertheless that it was not the Court's function "to speculate about

12  how future parole hearings should proceed."  Id.

13

14      In Irons, the Board deemed the petitioner, a second degree

15  murderer, unsuitable for parole despite his exemplary behavior in

16  prison.  On federal habeas, Irons argued, inter alia, that under the

17  Biggs dicta the Board had violated Due Process by relying repeatedly

18  on the nature of the commitment offense to deny parole.  Relying on

19  Sass, the Ninth Circuit rejected this argument.  Irons, 505 F.3d at

20  853-54.  The Court observed, inter alia, that the crime in Sass was

21  less callous than that in Irons, and that the petitioners in Biggs,

22  Sass and Irons had not served the minimum term to which they had been

23  sentenced at the time of the Board's denial of parole.  Id.  However,

24  the Court carefully limited its holding to the "particular

25  circumstances" of the offenses in Biggs, Sass and Irons.  Id.  ("All

26  we held in [Biggs and Sass], and all we hold today, . . . is that,

27  given the particular circumstances of the offenses in these cases, due

28  process was not violated when these prisoners were deemed unsuitable

1  for parole prior to the expiration of their minimum terms."); <u>see</u>

2  <u>Biggs v. Schwarzenegger</u>, 2007 WL 1140721, at *3 n.2 (E.D. Cal.

3  Apr. 17, 2007) ("<u>Irons</u> did not decide that reliance on unchanging

4  factors after the minimum term had been served was unlawful.  We

5  simply know that 'maybe' that will be the case.").

6

7       The day after the original Ninth Circuit decision in <u>Irons</u>,[11] the

8  Circuit reversed a district court's grant of parole eligibility in

9  <u>Kunkler v. Muntz</u>, 226 Fed. App'x 669 (9th Cir. 2007).  In that case,

10 after the Board granted parole at the petitioner's eighth parole

11 hearing, the Governor reversed the decision, citing the gravity of the

12 commitment offense and the petitioner's criminal history.  <u>Id.</u> at *1.

13 The Superior Court held the Board could not rely on the petitioner's

14 criminal history to deny parole because there was no evidence that any

15 of the petitioner's prior crimes involved violence.  <u>Id.</u>  On federal

16 habeas review, the district court granted the petition, applying the

17 <u>Biggs</u> dicta.  The Ninth Circuit reversed, holding that there was some

18 evidence to support the Board's decision, and quoting <u>Sass</u>' admonition

19 that "'it is not [this court's] function to speculate about how future

20 parole hearings could proceed.'"  <u>Id.</u> at *2 (citation omitted;

21 original brackets).

22

23      In <u>Hayward</u>, the Ninth Circuit cited the <u>Biggs</u> dicta and granted

24 habeas relief to a sixty-four-year-old state prisoner who had been

25

26 _____

27      [11]   The original <u>Irons</u> opinion, later amended in respects
   immaterial to the present proceeding, was filed on March 6, 2007.

28 <u>See</u> <u>Irons v. Carey</u>, 479 F.3d 658 (9th Cir. 2007), <u>amended</u>, 505
   F.3d 846 (July 13, 2007) .

1  incarcerated almost thirty years for second degree murder.  Hayward,

2  2008 WL 43716, at *9-10.  In doing so, however, the Hayward Court

3  expressly confined its ruling to the "unusual" and "extraordinary"

4  circumstances of that case.  Id. at *8.  Those circumstances,

5  emphasized repeatedly by the Hayward Court, included not only

6  Hayward's age and the remoteness of his crime, but also the

7  significant provocation for the crime (the victim had attacked

8  Hayward's girlfriend) and the Board of Prison Terms' successive,

9  favorable discretionary decisions (the Board twice had found Hayward

10  suitable for parole).  Id. at *6-10.  No such "unusual" or

11  "extraordinary" circumstances attend the present case.

12

13      Nothing in Sass, Irons, Kunkler or Hayward alters this Court's

14  conclusion that a grant of habeas relief to Petitioner under Biggs

15  dicta is not supported, much less compelled, by any "clearly

16  established" Supreme Court law.[12]  Section 2254(d)(1)'s reference to

17  "clearly established federal law" "refers to holdings, as opposed to

18  the dicta, of [Supreme Court] decisions."  Williams v. Taylor, 529

19  U.S. 362, 365 (2000).  The statements from Biggs quoted above are the

20  dicta of a Court of Appeals, not the Supreme Court.  Indeed, in

21

22  ———————————

23      [12]   One might conclude from Sass, Irons, Kunkler and
    Hayward that, except with respect to the extraordinary
24  circumstances found in Hayward, there does not exist any clearly
    established Ninth Circuit law in this area (much less any clearly
25  established Supreme Court law).  See Biggs v. Schwarzenegger,
    2007 WL 1140721, at *3-4 (discussing lack of guiding standards in
26  Sass and Irons); see also Kleve v. Kane, 2007 WL 879069, at
    *6 (N.D. Cal. Mar. 21, 2007) (noting that the Ninth Circuit has
27  not specified the number of denials or the length of time served
    beyond the minimum sentence that might trigger a Due Process
28  violation).

30

1   <u>Culverson v. Davison</u>, 2007 WL 1663682 (9th Cir. June 8, 2007), the

2   Ninth Circuit expressly ruled that "[t]here is no 'clearly established

3   federal law as determined by the Supreme Court of the United States'

4   that limits the number of times a parole board may deny parole to a

5   murderer based on the brutality and viciousness of the commitment

6   offense." <u>Id.</u> at *1 (footnotes omitted).  The Court ruled that "[t]he

7   *dicta* in Ninth Circuit cases like [<u>Biggs</u>] are not holdings of the

8   Supreme Court, as required by <u>Carey v. Musladin</u>, 549 U.S. ____, at

9   *5-7 [127 S. Ct. 649] (2006), and <u>Shriro [sic] v. Landrigan</u>, ___ U.S.

10  ___, 2007 WL 1387923, at *8-9 (May 14, 2007) [127 S. Ct. 1933

11  (2007)]." <u>Id.</u>; <u>see also</u> <u>Fernandez v. Kane</u>, 2006 WL 3041083, at *3

12  (N.D. Cal. Oct. 24, 2006) (<u>Biggs</u> dicta not clearly established federal

13  law as set forth by the Supreme Court).

14

15  **V.    <u>Petitioner's Claims Concerning the Board's Alleged Refusal to</u>**

16  **<u>Allow Petitioner to Speak at the Hearing Do Not Merit Habeas</u>**

17  **<u>Relief.</u>**

18

19       Petitioner contends the Board refused to allow Petitioner to

20  address the issue of the allegedly unsupported disciplinary conviction

21  (Petition, attached memorandum, p. 11).  According to Petitioner, the

22  presiding commissioner told Petitioner to shut his mouth, and said

23  that if Petitioner said one more word, the commissioner would have

24  Petitioner thrown out of the hearing (Petition, attached memorandum,

25  p. 11).  Petitioner also contends the commissioner's alleged statement

26  that Petitioner's mouth got Petitioner in trouble shows bias

27  (Petition, attached memorandum, p. 11).

28  ///

1     Due Process requires that the state provide an inmate with an
2  opportunity to be heard at a parole hearing.  <u>Greenholtz</u>, 442 U.S. at
3  16; <u>Bermudez v. Duenas</u>, 936 F.2d 1064, 1066 (9th Cir. 1991).
4  Petitioner was not denied this right.  At the hearing, Petitioner and
5  his counsel both spoke.  Petitioner spoke at some length regarding his
6  disciplinary convictions, and addressed the issue of the allegedly
7  unsupported conviction for falsifying documents (<u>see</u> Respondent's
8  Lodgment 3, pp. 54-57, 61-63).  The challenged statements by the
9  commissioner occurred not at the hearing, but during the Board's
10  statement of its decision.  During the presiding commissioner's
11  statement of the decision, Petitioner interrupted twice (Respondent's
12  Lodgment 3, p. 85).  At the first interruption, the presiding
13  commissioner told Petitioner to be quiet (Respondent's Lodgment 3,
14  p. 85).  At the second interruption, the presiding commissioner told
15  Petitioner that if Petitioner interrupted any more Petitioner would be
16  taken out.  <u>Id.</u>  At the conclusion of the proceedings, the presiding
17  commissioner added: "I also want to say good luck to you.  One thing
18  you need to keep in mind, sir, is sometimes your mouth gets you in
19  trouble.  Take that under advisement and use it." (Respondent's
20  Lodgment 3, p. 87).  Assuming, <u>arguendo</u>, Due Process entitled
21  Petitioner to speak at the hearing, personally and not just through
22  counsel, nothing shows Petitioner was prevented from doing so.  <u>See</u>
23  <u>Torricellas v. Davison</u>, 519 F. Supp. 2d 1040, 1051-52 (C.D. Cal. 2007)
24  (rejecting petitioner's claim that she was denied the right to speak
25  at her parole hearing, where record showed she had "ample opportunity
26  to speak," and did so).
27  ///
28  ///

1   Likewise without merit is Petitioner's claim of bias.  While a
2   prisoner is entitled to have his or her parole application considered
3   by a "neutral and detached body" that is "free from bias or
4   prejudice," O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990),
5   cert. denied, 498 U.S. 1096 (1991), administrative adjudicators are
6   presumed to act with honesty and integrity.  See Hortonville Joint
7   School Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 496-97
8   (1976); Withrow v. Larkin, 421 U.S. 35, 47 (1975).  To overcome this
9   presumption, a petitioner alleging bias "must show that the
10  adjudicator has prejudged or reasonably appears to have prejudged, an
11  issue." Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995) (internal
12  quotations omitted).  A petitioner may make this showing in two ways.
13  First, "the proceedings and surrounding circumstances may demonstrate
14  actual bias on the part of the adjudicator." Id.  Second, a
15  petitioner may show that "the adjudicator's pecuniary or personal
16  interest in the outcome of the proceedings . . . create[d] an
17  appearance of partiality that violates due process. . . ." Id.
18  Petitioner has not made either showing.  The presiding commissioner's
19  closing advice to Petitioner that sometimes Petitioner said things
20  which got Petitioner into trouble does not show actual bias or any
21  appearance of partiality.

22

23  In sum, the state courts' rejection of Petitioner's procedural
24  Due Process and bias claims was not contrary to, or an unreasonable
25  application of, any clearly established Federal law as determined by
26  the United States Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner
27  is not entitled to habeas relief on these claims.
28  ///

33

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED:   February _____, 2008.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

34

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.